Frank V. Moore, Defendant in Error, v. Charles Hahn and Rose Hahn, Plaintiffs in Error.

Gen. No. 8,708.

126

Heard in this court at the October term, 1933. Opinion filed February 19, 1934.

SNAPP, HEISE & SNAPP, for plaintiffs in error.

McGILVRAY, EAMES, VAUGHAN & TILLEY, JOHN H. SAVAGE and JAMES G. HOLBROOK, for defendant in error.

MR. JUSTICE DOVE delivered the opinion of the court.

Defendant in error, plaintiff below, brought his suit in assumpsit against the plaintiffs in error who were defendants below and by his declaration as amended alleged that the Chicago Trust Company, as trustee and not personally, on September 2, 1926, made its certain promissory note and thereby promised to pay, on or before five years after the date thereof, to the bearer, or his order, the sum of $4,250, for value received, with interest at the rate of six per cent until maturity, and after maturity until paid at the rate of seven per cent per annum; that the defendant in error is and was, at the time the note became due, the bearer thereof; that the plaintiffs in error did, on April 6, 1928, for a valuable consideration, guarantee the payment of said sum of money and promised the defendant in error to pay him according to the tenor and effect of the said note, if the Chicago Trust Company, as trustee and not personally, should not pay the same at maturity. The amended declaration then alleged that the Chicago Trust Company, as trustee, had failed to pay the note upon demand therefor, although the day of payment in said note specified had elapsed. The only difference between the original and the amended declaration is that the original declaration alleged that the guaranty was made at the time the note was made and that the defendants guaranteed to pay the note according to the tenor and effect thereof, while the amended declaration alleges the date of the

guaranty to be April 6, 1928, and that the defendants guaranteed to pay the note at maturity. Attached to the original and amended declarations was a copy of the note bearing the guaranty sued on. This instrument is as follows, viz.:

"PRINCIPAL NOTE

"$4,250.00 Chicago, Illinois, Sept. 2, A. D. 1926.

"On or before Five (5) year(s) after date for value received, Chicago Trust Company, a corporation of the State of Illinois, not personally but as Trustee under the provisions of a deed or deeds in trust duly recorded and delivered to said company in pursuance of a Trust agreement dated May 25, 1926 and known as Trust Number 1642, hereby promises out of that portion of Trust Estate subject to said Trust Agreement specifically described in the Trust Deed given to secure the payment hereof, to pay to bearer, in the manner hereinafter and in said Trust Deed provided, the principal sum of Four Thousand Two Hundred Fifty & 00/100 Dollars, in gold coin of the United States of America of the present standard of weight and fineness, with interest thereon payable in the same manner as said principal sum until the maturity hereof at the rate of six (6) per centum per annum, payable in like gold coin, on the 2nd day of March and of September in each year until maturity, and with interest after maturity until paid at the rate of seven (7) per cent per annum; which said several installments of interest until the maturity of said principal sum are further evidenced by interest notes or coupons of even date herewith with interest after due at the rate of seven (7) per cent per annum, payable in like gold coin, and the said payments of both principal and interest are to be made at the office of Chicago Trust Company in the City of Chicago.

"The payment of this note is secured by Trust Deed, bearing even date herewith, to Roy K. Thomas, Trustee, conveying certain real estate in Du Page County, Illinois. .It is agreed that this Note may become due and payable in its entirety in case of default in the payment of any installment of interest or principal or of any default in performance of any of the covenants of said Trust Deed, all as provided, and subject to the conditions set forth, in said Trust Deed.

"This note is executed by Chicago Trust Company, not personally, but as Trustee as aforesaid in the exercise of the power and authority conferred upon and vested in it as such Trustee, and is payable only out of the property specifically described in said Trust Deed securing the payment hereof, by the enforcement of the provisions contained in said Trust Deed. No personal liability shall be asserted or be enforcible against the promissor or any person interested beneficially or otherwise in said property specifically described in said Trust Deed given to secure the payment hereof, or in the property or funds at any time subject to said Trust Agreement, because or in respect of this note or the making, issue or transfer thereof, all such liability, if any, being expressly waived by each taker and holder hereof, and each original and successive holder of this note accepts the same upon the express condition that no duty shall rest upon the undersigned to sequester the rents, issues and profits arising from the property described in said Trust Deed, or the proceeds arising from the sale or other disposition thereof, but that in case of default in the payment of this note or of any installment of interest, the sole remedy of the holder hereof or of any of the interest coupons hereto attached shall be by foreclosure of the said Trust Deed given to secure the indebtedness evidenced by this principal note and the

interest notes hereto attached, in accordance with the terms and provisions in said Trust Deed set forth.

CHICAGO TRUST COMPANY

"As Trustee as aforesaid and not personally.
"Principal Note Number One.

This is the one principal note described in the within mentioned Trust Deed. "ROY K. THOMAS, Trustee."

By C. H. Fox
 Vice President.
Attest:
 W. T. ANDERSON,
 Secretary.

On the back of the foregoing instrument appears the following:

"We hereby guarantee the payment of the within Note when due with interest thereon, thereby waiving all Notice of Protest, Dishonor, Presentment, etc. Demand notice, notice of protest and protest is hereby waived and payment guaranteed.

SIGNED: CHARLES HAHN (SEAL)
 ROSE HAHN (SEAL)

"Sept. 30, A. D. 1926. Paid on principal hereon, $250.00 to Charles Hahn.

"A. PAUL PETERSON."

Appropriate verified pleas were filed and issues joined so that the question presented for determination to the trial court was whether the guaranty was upon the back of this instrument when defendant in error became the owner thereof, and if so, what is the legal liability imposed thereby. A jury was waived and the cause heard by the court, resulting in a judgment in favor of the plaintiff below for $4,575 and the record is brought to this court for review.

It appears from the evidence that prior to September 2, 1926, plaintiffs in error owned a 24-acre tract of land which they sold for $8,000, receiving $4,000 in cash and the note heretofore referred to. This note was erroneously drawn for $4,250 instead of $4,000,

but this error was corrected by it being credited with $250 as shown. After the execution of this note in 1926, it was taken by plaintiffs in error and placed in their safety deposit box in Lemont, Illinois. On February 29, 1928, the records of the Lemont hospital disclose that Mrs. Hahn became a patient therein and that she was discharged therefrom on March 3, 1928. According to her testimony, on account of her illness, she was unable to leave her home and did not go out of her house from March 3, 1928, until April 4, 1928. Mrs. Tivy was a close friend of Mrs. Hahn and had negotiated the sale of the 24-acre tract of land and Mrs. Tivy, at the suggestion of Mrs. Hahn, spoke to Mr. Daniels, the vice president of the Orland State Bank, of Mrs. Hahn's desire to sell this note. Mr. Daniels in turn interested George Gee, who is the son-in-law of defendant in error, Moore, in its purchase, and on April 5, 1928, Gee purchased it from plaintiffs in error for defendant in error for $3,628.50.

As to what transpired when Mr. Gee received the note and delivered his check in payment therefor, and whether there had been a prior meeting of the parties, the evidence is in hopeless conflict. Mr. Gee testified that he was cashier of the Orland State Bank, and had been for 10 years; that acting for defendant in error, he went with Mr. Daniels to the home of plaintiffs in error a month or six weeks prior to April 5, 1928, for the purpose of negotiating for the purchase of the note; that the note was there and he told plaintiffs in error that the mortgage was not sufficient security for the payment of the note and that if they purchased it, there would have to be a guaranty, and being asked what a guaranty meant, he told them that it meant the same thing as a man signing a note, when it came due, if it was not paid they would have to pay it, whereupon plaintiffs in error said to wait a while, that they might get the money some other way. Gee, according to his testimony, wrote, at this first visit, upon the back of

the note these words: ''We hereby guarantee the payment of the within note when due with interest thereon, thereby waiving all notice of protest, dishonor, presentment, etc.'' He further testified that when he returned on April 5th or 6th, he had his bank stamp with him, having been advised that plaintiffs in error were ready to accept his offer and at that time, before plaintiffs in error placed their names on the lines which he had previously drawn on the back of the note, he stamped thereon the words, ''Demand, Notice, Notice of Protest and Protest is hereby waived and payment guaranteed.'' His explanation for taking this stamp with him at that time was because he placed it upon all notes which he purchased and knew it contained the necessary legal words to bind plaintiffs in error as guarantors. He further testified that Mrs. Tivy was at the home of plaintiffs in error but not in the room where the transaction occurred and that after plaintiffs in error had signed their names, he accepted the note and they accepted his check in payment therefor.

Magnus S. Strand testified that he was cashier of the Lemont National Bank until May 1, 1931, when he became assistant cashier of the Orland State Bank. He was well acquainted with plaintiffs in error, as they did their banking business with the Lemont National Bank, and the check of Mr. Gee for this note was deposited by them in that bank. According to his testimony, he met Mrs. Hahn about two weeks before this check was deposited and at that time had a conversation with her on the street, at which time she had the note, and told him about her previous negotiations with Gee. She stated to this witness that she had offered the note for sale to Gee, but she didn't think the amount Gee offered for it was sufficient, and that Gee wanted her to guarantee the payment of the note and showed him the note with the written unsigned guaranty thereon. He further testified that in

response to her inquiry he told her that if she did sign the guaranty, she would have to pay it if it was not paid by the principal.

Frank E. Powell testified that in 1928 he was assistant cashier of the Orland State Bank, being succeeded by Mr. Strand, and that immediately after Gee had purchased this note in April, 1928, he brought it to the bank, showed it to this witness and at that time the stamped and written indorsements appeared thereon.

Mrs. Hahn testified that the first time she was out of her house after returning from the hospital on March 4, 1928, was on April 4th; that on that day she went with Mrs. Tivy, who had informed her that Mr. Gee was coming to her home the next day to purchase the note, to the safety box and brought the note home with her; that from the time she received this note in 1926 until April 4, 1928, it had never been taken out of the safety box. She contradicts *in toto* everything testified to by Mr. Strand and denies that Mr. Gee ever called at her home except once, and that was on April 5th when he purchased the note. She insists that Mrs. Tivy was present in the room and that nothing was ever said about a guaranty, nor was any request ever made of her or her husband to guarantee the payment of the note, and that when she signed it there were no lines written under their names, the words "Seals" did not appear thereon and nothing was written or stamped above their signatures. She further testified that she asked Mr. Gee why he wanted them to sign their names on the back of the instrument, and Mr. Gee replied that it was so he would know from whom he had bought it. As to what transpired at the time the note was purchased the testimony of Mrs. Hahn is corroborated by Mr. Hahn and Mrs. Tivy.

Lillian Benson testified that on March 6 or 7, 1928, she went to the home of Mrs. Hahn, being employed to attend her as a nurse, and remained there until

April 8th. April 4th or 5th, according to her testimony, was the first time Mrs. Hahn was out of the house after Miss Benson came; that on April 4th or 5th, Mrs. Hahn went with Mr. Hahn and Mrs. Tivy (then Mrs. Vandry) to get the note from the safety box; that on the following day a gentleman called and a transaction about the note occurred, as she brought ink and a pen to them in the dining room, but she did not hear the conversation, as the door was closed.

Dr. Ludwig testified that Mrs. Hahn was at his office in Lemont on March 10th, 13th and 16th, and also on April 1st and 5th, and that he visited her at her home on March 22nd and 23rd, when she was threatened with pneumonia. Later Dr. Ludwig was recalled as a witness and stated that he had testified from the entries in his day book and could not say positively whether Mrs. Hahn had been at his office on these days or not. Mrs. Hahn testified she had been operated upon on March 5, 1928; subsequently she testified that she had been confused about this date and the operation she referred to had been performed about that time the previous year. Mrs. Hahn also testified that after the maturity of this note she saw it and examined it at the Orland State Bank, and at that time no written or stamped indorsements appeared thereon. Just prior to the time the note became due, it was sent to the Continental-Illinois National Bank and Trust Company of Chicago for collection. On September 7th or 8th, Fred D. Leitz, an official of that bank, saw this note there before it had been returned to the Orland State Bank, and he testified in this cause that it then bore the written and stamped indorsements as shown.

Whether this guaranty was upon this note at the time plaintiffs in error indorsed their names thereon was solely a question of fact. The original instrument has been certified to this court and we have examined it in the light of the testimony, including that of Herbert J. Walter, a handwriting expert, called as a

witness by defendant in error. If the version of this transaction as detailed by plaintiffs in error and Mrs. Tivy is true, the written and stamped guaranty, the signature lines and "Seals" were placed thereon by defendant in error or by Gee in the period beginning shortly after the maturity of the note and ending at the time of the hearing. The appearance of the instrument and the testimony of Mr. Walter discloses that in the guaranty and in the signatures, there is no variation in color and fading. Other matters which indicate that the signature lines and "Seals" were first impressed before the names of plaintiffs in error were written have been called to our attention, and taking all the evidence into consideration, this court feels that the conclusion arrived at by the trial court is warranted by the evidence. The trial court had many superior advantages over us in determining the truth. He specifically found that plaintiffs in error executed the guaranty sued on for a valuable consideration, and that defendant in error relied upon that guaranty and demanded its execution as a condition precedent to his purchase of the note. The evidence sustains the finding of the court, and we are unable to say that the judgment is against the manifest weight of the evidence.

It is next insisted by plaintiffs in error that no cause of action had arisen when this suit was instituted as this is a proceeding by an assignee to recover on a chose in action and the declaration fails to allege on oath the assignment, the actual ownership of the assignee and how and when he acquired title. Counsel for plaintiffs in error misapprehended the allegations of the declaration. It does not allege that defendant in error as an assignee of a chose in action was bringing suit thereon, but according to the allegations of the declaration plaintiffs in error executed for a valuable consideration a contract of guaranty. Defendant in error received this contract of guaranty and paid a

consideration therefor. This suit is not between an assignee of that contract and the makers thereof, but between the original parties thereto. This is not a proceeding to recover on the note, but to recover according to the contract of guaranty. This contract, in our opinion, was an unconditional, absolute promise to pay, on September 2, 1931, the maturity of the instrument, and payment having been demanded, as the evidence discloses, and refused, the obligation of the plaintiffs in error to pay arose immediately upon the nonpayment of this note at maturity and a cause of action had arisen on September 5, 1931, when this suit was instituted. *Taussig v. Reid*, 145 Ill. 488; *Holm v. Jamieson*, 173 Ill. 295.

It is next contended that the evidence does not disclose any consideration passing from defendant in error to plaintiffs in error for this guaranty and that the court erred in refusing to permit Mrs. Hahn to answer the following question on direct examination: Did you ever receive any consideration for guaranteeing that note? The court properly sustained an objection to this question. It called for a conclusion, one of the ultimate facts which the court would finally be called upon to determine after hearing all the conversations and transactions detailed by the several witnesses who were called to testify. *Lucas v. Beebe*, 88 Ill. 427. It is true that the check delivered to plaintiffs in error at the time Mr. Gee received the instrument bearing their guaranty was payable to Mr. Hahn, but no objection was made at that time by Mrs. Hahn and she cannot be heard to make any objection now. Furthermore, the guaranty was under seal and the evidence discloses that the proceeds of this check were used to pay medical and hospital expenses incurred by reason of Mrs. Hahn's illness.

Finding no reversible error in this record, the judgment of the trial court is affirmed.

*Judgment affirmed.*